**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000433**
**21-SEP-2018**
**08:11 AM**

NO. CAAP-16-0000433

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

HOKU LELE, LLC, a Hawaii limited liability
company; DONN EISELE, Plaintiffs-Appellants, v.
CITY AND COUNTY OF HONOLULU,
a Hawaii Municipal corporation, Defendant-Appellee,
and
DOES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-1448)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Leonard, JJ.)

Plaintiffs-Appellants Hoku Lele, LLC and Donn Eisele
(collectively, **Hoku Lele**) appeal from the May 2, 2016 Final
Judgment and challenge the March 17, 2016 Findings of Fact,
Conclusions of Law, and Decision and Order Granting the City and
County of Honolulu's Motion for Summary Judgment Filed November
18, 2015 (**Order Granting Summary Judgment**), both entered in favor
of Defendant-Appellee City and County of Honolulu (the **City**) and
Doe Defendants, by the Circuit Court of the First Circuit
(**Circuit Court**).[1]

---

[1]     The Honorable Judge Rhonda A. Nishimura presided.

Hoku Lele's complaint (**Complaint**) sought money damages and equitable relief arising out of the City's response to Hoku Lele's request for confirmation that certain property was compliant with applicable zoning ordinances. The City's response stated, in short, that the two buildings in question were not lawful dwelling units because they were "constructed" contrary to the zoning regulations in effect at the time the buildings were moved to the site, notwithstanding that building permits had been issued. The Complaint alleged, *inter alia*, that the City's response violated Hoku Lele's right to due process because the City failed to afford it "adequate predeprivation notice and an opportunity to be heard." The Circuit Court granted summary judgment in favor of the City, and concluded, *inter alia*, that (1) Hoku Lele's due process rights were not violated and (2) the relief requested by Hoku Lele for the alleged violation of its due process rights under the Hawai'i Constitution, money damages, was unavailable as a remedy for the injuries alleged.

For the reasons stated below, we affirm.

I.   BACKGROUND

Hoku Lele is the former owner a 1.05 acre property in Waimanalo (**Waimanalo Property**), which includes four structures referred to by the City as Buildings A, B, C, and D. Buildings C and D, the buildings in dispute, were built in 1954 in Waikiki.

In 1963, two building permits (**Building Permits**) were issued by the City for the relocation of Buildings C and D from Waikiki to the Waimanalo Property. At the time of the relocation, the Waimanalo Property was classified as a "Rural

Protective District," which permitted the building of only one dwelling unit per acre of land. Despite the apparent violation of the zoning rules in place at the time, the City issued the Building Permits. In 1972 and 1975, City inspectors issued certain documents that discussed the Waimanalo Property's compliance with the zoning ordinances, neither of which described a violation; the November 17, 1972 report stated that Buildings C and D were existing nonconforming structures on the Waimanalo Property, and the January 16, 1975 report stated that the buildings were "legal, nonconforming structures." However, as discussed below, in late 2005, the City disagreed with these conclusions, saying that it appeared that the inspectors overlooked the fact that the site was formerly within an Agricultural Subdivision.

Hoku Lele purchased the Waimanalo Property in July of 2005. Hoku Lele submitted a "zoning verification" request (**Verification Request**) to the City's Department of Planning and Permitting (**DPP**) on November 2, 2005. The Verification Request sought confirmation of the Waimanalo Property's compliance with the zoning ordinances and sought confirmation that the existing structures could be rebuilt. In response, Hoku Lele received a letter from the director of the DPP (**Director**), dated November 21, 2005 (**November Zoning Verification Letter**), stating in part:

> Neither Building C nor Building D is a lawful dwelling unit. This is because they were constructed (relocated onto the property) contrary to the underlying zoning district regulations in effect in 1963, despite obtaining the necessary permits.
>
> To be legally established, a use must have been allowed by the zoning code at the time it was constructed. The 1.05-acre site was located in an

> Agricultural Subdivision in 1963, when the building
> (relocation) permits were issued for Buildings C and
> D.  As noted above, the zoning code at that time
> stated that no dwelling unit in excess of one (1) unit
> per acre of land could be built in an Agricultural
> Subdivision.  Buildings C and D were thus not
> established in accordance with the zoning regulations
> then in effect, and the relevant building permits
> appear to have been issued in error.  Therefore, our
> conclusion is that Building C and Building D were not
> legally established.

The letter further stated that it was based on limited information and the DPP had not checked the actual site, the site plans, or the building permit history for the Waimanalo Property in developing its response.  The November Zoning Verification Letter encouraged Hoku Lele to provide the DPP with additional information or to apply for a variance.

Hoku Lele submitted additional information that was reviewed by the Director, and the Director responded in a letter dated December 20, 2005 (**December Zoning Verification Letter**), that the DPP could not recognize that Buildings C and D were legally constructed nonconforming dwelling units.  The Director explained that to so qualify, the units are required to have been legally established, which means that the buildings must have been allowed by the zoning ordinances at the time the units were constructed or begun.  The Director again suggested that Hoku Lele seek a variance through the appropriate processes.

Hoku Lele sought two additional building permits from the DPP that were approved as the requested permits pertained to repairing damage to the doors, windows, roof, walls, floors, electrical and plumbing work on the existing structures.  Hoku Lele was never denied a building permit for work on the Waimanalo Property.  The DPP did not suspend or revoke the Building Permits

and did not issue any citation for a violation on the Waimanalo Property. No action was taken by the City with respect to the Building Permits. Hoku Lele never sought a variance from the DPP with respect to the two structures.

On July 2, 2010, Hoku Lele filed its Complaint in the Circuit Court. The Complaint sought declaratory relief and money damages, asserting claims of equitable estoppel, vested rights, and a violation of Hoku Lele's right to due process under the Hawai'i Constitution and the United States Constitution. The City filed a motion to dismiss, granted by the Circuit Court, on the basis that the court lacked subject matter jurisdiction because Hoku Lele had not exhausted its available administrative remedies. See Hoku Lele, LLC v. City & Cty. of Honolulu, 129 Hawai'i 164, 296 P.3d 1072 (App. 2013) (Hoku Lele I). This court vacated the Circuit Court's decision in Hoku Lele I and held that the Circuit Court erred in dismissing the Complaint because Hoku Lele was not required to exhaust administrative remedies because the Director's response to a zoning verification request did not qualify as an "action[] of the director" and thus did not come within the jurisdiction of the City's Zoning Board of Appeals (ZBA). Id. at 168-69, 296 P.3d at 1076-77. The case was remanded to the Circuit Court. Id. at 169, 296 P.3d at 1077.

Sometime before September 10, 2015, Hoku Lele sold the Waimanalo Property to an unidentified third-party. On November 18, 2015, the City filed a Motion for Summary Judgment (Motion for Summary Judgment) arguing, inter alia, that Hoku Lele's claims for equitable/declaratory relief were rendered moot by the

sale of the Waimanalo Property and were also unripe.  In addition, the City argued that money damages are not an available remedy for an alleged due process violation with respect to Hoku Lele's claims.  After a hearing, the Circuit Court granted the Motion for Summary Judgment.  In its Order Granting Summary Judgment, the court found that there were no genuine issues of material fact and that (1) the equitable/declaratory relief sought by Hoku Lele was moot, (2) Hoku Lele's due process rights were not violated, and (3) as a matter of first impression and as a matter of law, money damages were not an available remedy for the injuries alleged by Hoku Lele.

On appeal, Hoku Lele does not contest that its equitable/declaratory relief claims are now moot.  However, Hoku Lele argues that money damages should be available as a remedy for the City's alleged violations of its due process rights, namely, the City's failure to provide it "adequate predeprivation notice and an opportunity to be heard" with respect to the issuance of the November Zoning Verification Letter and December Zoning Verification Letter (collectively, **Zoning Verification Letters**).

II.   POINTS OF ERROR

Hoku Lele contends that the Circuit Court erred in the Order Granting Summary Judgment, when it concluded in Conclusions of Law (**COLs**) 1, 2, and 8, that:  (1) Hawai'i case law does not recognize the award of money damages as a remedy for the type of injuries alleged by Hoku Lele's Complaint; (2) as a matter of first impression, money damages are not an available remedy for

the injuries alleged by Hoku Lele's Complaint; and (3) the City did not violate Hoku Lele's due process rights by issuing the Zoning Verification Letters.

Hoku Lele further contends that the Circuit Court erred in entering judgment against it based on the Order Granting Summary Judgment.

III. APPLICABLE STANDARD OF REVIEW

"Appellate courts review an award of summary judgment de novo under the same standard applied by the circuit court." Salera v. Caldwell, 137 Hawai'i 409, 415, 375 P.3d 188, 194 (2016) (citation omitted). The Hawai'i Supreme Court has articulated this standard as follows:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
>
> This court must review the evidence and inferences in the light most favorable to the non-moving party.

Id. (citation omitted; format altered).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [The appellate court] ordinarily reviews COLs under the right/wrong standard.

Chun v. Bd. of Trs. of the Emps.' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (citations, internal quotation marks, and brackets omitted).

IV. DISCUSSION

In COL 8, the Circuit Court concluded that the City did not violate Hoku Lele's right to due process by issuing the Zoning Verification Letters. The due process clauses of the

Fourteenth Amendment to the United States Constitution and article I, section 5 of the Hawaiʻi Constitution guarantee, *inter alia*, that no person shall be deprived of life, liberty, or property without due process of law.  The Hawaiʻi Supreme Court, in construing the parameters of these rights, has explained:

> [d]ue process is not a fixed concept requiring a specific procedural course in every situation.  Rather, due process is flexible and calls for such procedural protections as the particular situation demands.  The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

Price v. Zoning Bd. of Appeals of City & Cty. of Honolulu, 77 Hawaiʻi 168, 172, 883 P.2d 629, 633 (1994) (citations omitted). Generally,

> a claim of a due process right to a hearing requires a two step analysis: (1) is the particular interest which the claimant seeks to protect by a hearing "property" within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is "property" what specific procedures are required to protect it.

Id. (citation omitted).

Thus, we first consider whether the particular interest which Hoku Lele seeks to protect by a hearing is "property" within the meaning of the due process clauses of the federal and Hawaiʻi constitutions.  Id.  Regarding property interests afforded the protections of due process, the Hawaiʻi Supreme Court has explained that "'[t]hese interests—property interests—may take many forms' because courts have long recognized that 'property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.'"  In re Application of Maui Elec. Co., 141 Hawaiʻi 249, 260, 408 P.3d 1, 12 (2017)(quoting Bd. of Regents v. Roth, 408 U.S. 564, 571-72, 576 (1972)).  The claimed property

interest need not be tangible; rather, a protected property interest exists in a benefit to which a party has a "legitimate claim of entitlement." Id. (citation omitted).

> The legitimate claims of entitlement that constitute property interests are not created by the due process clause itself. Instead, "they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlement to those benefits."

Id. (quoting In re 'Iao Ground Water Mgmt. Area High-Level Source Water Use Permit Applications, 128 Hawai'i 228, 241, 287 P.3d 129, 142 (2012)). Therefore, we must look to Hawai'i law, including the relevant City regulations and ordinances, to determine whether a "legitimate claim of entitlement" exists in the property interest claimed by Hoku Lele. Id.

In the Complaint, Hoku Lele alleged the following with respect to its claimed property interest:

47. [Hoku Lele] possesses a constitutionally recognized and protected property interest as set forth in the Fifth and Fourteenth Amendments to the United States Constitution; article I, section 5; and article I, section 20 of the Hawaii Constitution in that it has legitimate claims of entitlement to Building Permit Nos. 205919 and 205920.

48. By treating Building Permit Nos. 205919 and 205920 as illegal without first providing [Hoku Lele] adequate predeprivation notice and an opportunity to be heard, the City has effectively revoked Building Permit Nos. 205919 and 205920 and deprived [Hoku Lele] of property without due process of law.

(Emphasis added).

Thus, Hoku Lele alleged, in the first instance, that it had a protected property interest in the Building Permits themselves.[2] The City argues that Hoku Lele has no "legitimate

_____

[2] As discussed below, on appeal, Hoku Lele argues a somewhat different property interest.

9

claim of entitlement in the Building Permit(s)" because they were issued in violation of the zoning ordinances in effect at the time and a number of jurisdictions have found no property interest protected by due process in improperly-issued building permits. See, e.g., Gunkel v. City of Emporia, Kan., 835 F.2d 1302 (10th Cir. 1987) (no property right under Kansas law in invalidly-issued building permit and permit may be revoked without notice or a hearing); see also City of Jackson v. Kirkland, 276 So.2d 654 (Miss. 1973).

As a preliminary matter, we reject the City's argument. The City's position would allow it to determine that a building permit, in which the holder otherwise has a due process property interest, could be unilaterally declared invalid by the City and the permit holder has no right to contest that decision because the City has made that decision. Such a position would allow the City to arbitrarily revoke a permit, on the basis that it was invalidly issued, without any process whatsoever. In addition, we note that there are procedures that must be followed to suspend or revoke a building permit that the DPP believes was issued in error. Accordingly, it appears that a permit holder has a legitimate claim of entitlement protected by due process in a building permit that the City later considers to have been issued in error. See Revised Ordinances of Honolulu (ROH) § 18-5.4(d)-(e) (1997).[3]

_____

[3]     ROH § 18-5.4(d)-(e) state, in relevant part:

(d) Suspension or Revocation for Noncompliance.
    (1)   The building official may issue a notice to
    suspend or revoke a permit pursuant to the

(continued...)

10

However, Hoku Lele is not arguing in this appeal that the Building Permits themselves are the property of which they were deprived. Rather, Hoku Lele argues that "the Building Permits themselves are not the property of which Hoku Lele was deprived, but rather Hoku Lele was deprived of the rights which the Building Permits represented." Hoku Lele further argues that the City "essentially declared the buildings themselves to be illegal structures which rendered the Building Permits void as a practical matter." However, this argument disregards our decision in Hoku Lele I, in which we ruled in favor of Hoku Lele.

In Hoku Lele I, the City argued that the Zoning Verification Letters should be considered as decisions on an application pursuant to the Land Use Ordinance (LUO) and as a determination that Buildings C and D were not lawful nonconforming dwelling units. 129 Hawai'i at 167, 296 P.3d at 1075. However, this court held, in sum, that a zoning verification request is not tantamount to an application pursuant to the LUO or a petition for a declaratory ruling regarding a

---

[3](...continued)
requirements of Section 18-5.4(e) whenever the permit is issued under the provisions of this chapter:
    (A)   In error;
    (B)   On the basis of incorrect information supplied; or
    (C)   In violation of any provision of the building, electrical or plumbing codes or any other code, ordinance or regulation.
. . . .
(e) Notice of Suspension or Revocation of Permit.
(1) The building official shall issue to the permittee a written notice to show cause why the building permit should not be suspended or revoked and set forth specific grounds for the suspension or revocation of the permit. The notice shall state that the permittee may apply in writing for a hearing before the building board of appeals; that such application shall be submitted within 10 working days of receipt of the notice.

nonconforming use.  Id. at 168-69, 296 P.3d at 1076-77.  A response to a zoning verification request is, therefore, in effect advisory.

Hoku Lele's argument that the City "essentially declared the buildings themselves to be illegal structures" and that therefore Hoku Lele can't "fix up the structures already existing on the property" is not supported by the record in this case.  As stated above, Hoku Lele sought two additional building permits from the DPP that were approved as the requested permits pertained to repairing damage to the doors, windows, roof, walls, floors, electrical and plumbing work on the existing structures.  Hoku Lele was never denied a building permit for work on the Waimanalo Property.  The DPP did not suspend or revoke the Building Permits and did not issue any citation for a violation on the Waimanalo Property.  No action was taken by the City with respect to the Building Permits.  Hoku Lele never sought a variance from the DPP with respect to the two structures or filed a petition for a declaratory ruling.  Thus, while we recognize that Hoku Lele has a property interest in the Building Permits themselves for due process purposes, the Zoning Verification Letters did not constitute a decision or determination on the Building Permits and we reject Hoku Lele's nebulous assertion of "rights that the Building Permits represented."  In effect, a zoning verification request response serves as an informal advisory opinion regarding the status of the property with respect to the zoning ordinances.

The parties have not identified any statutes, ordinances, or any other regulations regarding the procedure to be employed by the Director regarding zoning verification requests. We explained before that "nothing in the [Revised Charter of the City and County of Honolulu], the LUO, or the DPP's Rules of Practice and Procedure (DPP Rules) (1999) expressly addresses or even mentions the director's ability to render decisions on requests for a zoning verification." Hoku Lele I, 129 Hawai'i at 167, 296 P.3d at 1075. The informality of the procedure utilized by the Director in assessing zoning verification requests is also made evident in the November Zoning Verification Letter issued by the Director, which states: "Please note that we did not check the actual site, site plans or the building permit history for the site, which may reveal unique circumstances and conditions associated with the property."

The only effect of a response by the Director to a zoning verification request is an informal opinion from the Director providing or withholding current acknowledgment of compliance with the applicable statutes, ordinances, or rules. Critically, no adverse action was taken against Hoku Lele regarding the Building Permits. In contrast, a formal procedure is available to the Director to suspend or revoke a building permit because it was either issued in error, on the basis of incorrect information, or because it was issued in violation of, inter alia, the applicable building codes. See ROH § 18-5.4(d)(1). The procedure for the suspension or revocation of a permit is provided in detail in the ROH. The ordinances state:

> [t]he building official shall issue to the permittee a
> written notice to show cause why the building permit should
> not be suspended or revoked and set forth specific grounds
> for the suspension or revocation of the permit. The notice
> shall state that the permittee may apply in writing for a
> hearing before the building board of appeals; that such
> application shall be submitted within 10 working days o§f
> receipt of thetice.

ROH § 18-5.4(e)(1). The permittee is entitled to a hearing in

front of the ZBA before the permit may be suspended or revoked,

the procedure for which is governed by Hawaii Revised Statutes

(HRS) Chapter 91. See ROH § 18-5.4(f)(3).

Having completed the zoning verification request

process, in the absence of any further action by the Director to

suspend or revoke the Building Permits, Hoku Lele was still not

without further recourse. In the Zoning Verification Letters,

Hoku Lele was invited to initiate a formal procedure with the

City if it wished to proceed, e.g., apply for a variance. As we

explained in Hoku Lele I,

> the case law illustrates that the proper courses of director
> action on a nonconformity are to render decisions on
> petitions for a variance or a declaratory ruling or to issue
> enforcement orders, all of which are specific "actions of
> the director" appealable to the ZBA pursuant to the ZBA
> Rules.

129 Hawai'i at 168, 296 P.3d at 1076; see also Revised Charter of

the City and County of Honolulu § 6-1516 (2001); ZBA Rules §§

21-1, 22-1 (1998).

Even assuming, arguendo, that the Zoning Verification

Letters could be construed to be a deprivation of a property

interest protected by due process, the Hawai'i Supreme Court has

recognized that meaningful post-deprivation review can be

sufficient to satisfy due process so long as certain conditions

are satisfied. Due process is not a fixed concept and the

procedures required for the protection of due process are flexible. See Price, 77 Hawai'i at 172, 883 P.2d at 633.

In Price, the petitioner was fined by the City for what was alleged to be an impermissible commercial eating establishment in an area where such establishments were prohibited. Id. at 169-70, 883 P.2d at 630-31. One of the claims made on appeal by the petitioners was that the assessment of a daily fine for violating a zoning ordinance offended due process because they were entitled to a hearing before being assessed a fine. Id. at 172-73, 883 P.2d at 633-34. The supreme court rejected this argument and found that the petitioners were afforded an adequate opportunity to challenge the assessed fines at the administrative and judicial levels before incurring an obligation to pay the fine. Id. at 174-75, 883 P.2d at 635-36. Describing the procedures available to the petitioners, the supreme court explained:

> Herein, the procedure . . . provide[s] for due process. . . . A notice [was] served. The effect of the notice [was] somewhat similar to the effect of service of summons in a civil action. The person[s] served [were] given a period of . . . days within which to request a hearing before the [administrative agency]. In the interim, the collection of the [assessed] fine [did] not take place, and the collection [was] deferred until after [finality]. There [was], thus, no deprivation, even temporarily, without a hearing. . . . There [was] adequate opportunity to be heard.

Id. at 174, 883 P.2d at 635 (citation omitted); see also In re Tax Appeal of Hawaiian Flour Mills, Inc., 76 Hawai'i 1, 8-9, 868 P.2d 419, 426-27 (1994) (due process satisfied in tax collection where State provides "meaningful backward-looking relief" which includes a fair opportunity to challenge the accuracy and legal validity of tax obligation and a clear and certain remedy).

Although the instant case does not involve the collection of taxes, these cases are instructive as they illustrate that meaningful backward-looking relief and process can be sufficient to adequately safeguard due process rights.

In this case, no adverse action has been taken against Hoku Lele or the Building Permits as a result of the zoning verification process.  Rather, Hoku Lele requested and the City provided an advisory opinion regarding the compliance of the Waimanalo Property with the zoning ordinances. Moreover, formal procedures were available to Hoku Lele to have official action taken with respect to the Waimanalo Property, applying for a variance or seeking declaratory relief.  These procedures provide meaningful due process and remedies and, therefore, the City did not offend Hoku Lele's due process rights by issuing its advisory opinion without a hearing.

We conclude that the Circuit Court did not err in COL 8, as Hoku Lele's due process rights were not offended. Therefore, it is unnecessary for the court to address the issue of whether money damages were an available remedy for the due process violations alleged by Hoku Lele and the Circuit Court did not err in entering judgment in the City's favor.

V.    CONCLUSION

For these reasons, the Circuit Court's May 2, 2016 Final Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, September 21, 2018.

On the briefs:

Robert H. Thomas,
(Damon Key Leong Kupchak
 Hastert),
for Plaintiffs-Appellants.

Brad T. Saito,
Krishna F. Jayaram,
Deputies Corporation Counsel,
City and County of Honolulu,
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge